UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER R. RUMBIN, | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 3:11-CV-904 (CSH) |
| v. | : | |
| ARNE DUNCAN, United States Secretary of Education; TIMOTHY GEITHNER, United States Secretary of the Treasury; BETH HARRIS; and the UNIVERSITY OF CHICAGO, | : | JUNE 25, 2014 |
| Defendants. | : | |

**RULINGS ON DEFENDANTS' MOTIONS TO DISMISS THE
COMPLAINT AND FOR SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

Plaintiff Peter R. Rumbin, appearing *pro se*, filed this action against the United States, through Secretary of Education Arne Duncan and then-Treasury Secretary Timothy Geithner (collectively "the Government"); the University of Chicago; and Beth Harris, an administrator for the University. Plaintiff complains about deductions the United States is making from Plaintiff's monthly Social Security payments, on the stated basis that Plaintiff's benefits are subject to attachment by the United States to satisfy a student loan debt incurred by Plaintiff in prior years.

The United States moves to dismiss Plaintiff's complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The University of

1

Chicago and its administrator move for summary judgment under Rule 56. Plaintiff opposes both motions. This Ruling decides them.

## I. FACTUAL BACKGROUND

The record in this case includes documents attached to Plaintiff's complaint and incorporated therein by reference. The Court may therefore consider that material within the context of the Government's motion under Rule 12(b)(6) to dismiss for failure to state a claim, which is ordinarily limited to a consideration of the allegations in the pleading. The University of Chicago defendants, on the other hand, move for summary judgment under Rule 56. Counsel for those defendants gave Plaintiff the requisite advice to *pro se* litigants about the nature of a summary judgment and how the *pro se* litigant should respond to it. Plaintiff in this case, opposing that motion, has submitted additional evidentiary material beyond the allegations in the complaint, and the Court has considered it. Accordingly, both motions are in a proper procedural posture for determination on their merits.

Based upon the pleadings, affidavits, Rule 56 statements, and exhibits in the record, the following facts are undisputed or could not reasonably be disputed.

In March of 1977 the Plaintiff, Peter R. Rumbin, was a student at the University of Chicago. On March 29, 1977, the University provided a federal student loan to Plaintiff under the National Direct Student Loan program. The amount of the loan was $1,650.00. Two disbursements were made to Rumbin under that program and loan: $1,050.00 was disbursed on March 29, 1977, and $600.00 was disbursed on April 15, 1977. The loan and payments under it were administered by the Student Loan Administration Office of the University of Chicago.

Through that office, the University sought repayment of this loan from Mr. Rumbin. He

failed to make any repayment. On May 2, 1980, the University declared the loan to be in default. On February 10, 1989, the University of Chicago assigned the loan to the United States Department of Education ("DOEd"). After that assignment, the University of Chicago has made no collection efforts on the loan. It has made no other loans to Rumbin. Since assigning this loan for $1,650 to the DOEd, the University has not claimed, and does not presently claim, that Mr. Rumbin is indebted to the University for any student loan obligation. The University has had no involvement in the deductions the Government is making from Plaintiff's Social Security benefits, which form the subject matter of this action.[1]

This $1,650.00 student loan to Mr. Rumbin was denominated a National Direct Student Loan ("NDSL"). NDSLs are loans funded directly by the DOEd. In addition to that loan, in March 1977 Rumbin took out a Federally Insured Student Loan ("FISL") in the amount of $890. He also took out two Guaranteed Student Loans ("GSLs"), as follows: $2,500.00, loaned by the Connecticut Savings Bank to Plaintiff on October 28, 1977; and $2,500.00, loaned by the Connecticut Savings Bank to Plaintiff on December 21, 1978. These loans are all referred to by Plaintiff's complaint in the case at bar, [Doc. 1] at pages 2-3, and the Court may consider, on the Government's motion to dismiss the complaint, documents generated by the loans, some of which are attached to the complaint as exhibits, others submitted by the Government in support of its motion.

The United States commenced an action against Mr. Rumbin in this Court on October 17, 1989: Docket No. N-89-522 ("the 1989 Action"). The case was assigned to Judge Eginton. The complaint in the 1989 Action, a copy of which is attached as an exhibit to the complaint in this

---

[1] The facts recited in these paragraphs of text are based principally upon the affidavit of Norma Carmona, the Director of the Student Loan Administration Office for the University of Chicago [Doc. 28-2].

action, referred only to the $1,650.00 loan: "The defendant [Rumbin] is indebted to the plaintiff [the United States] in the principal amount of $1,650.00, plus interest . . ." ¶ 3.

Mr. Rumbin filed a *pro se* answer to the 1989 Action on November 3, 1989. The answer admitted that demand had been made upon him for payment of the claimed indebtedness on the $1,650 loan and the amount remained unpaid. The answer went on to allege, as a "Second Defense," that "The subject loan in this action, as well as a Connecticut Student Loan were made incident [to] the defendant's [Rumbin's] application for financial assistance to the University of Chicago, Financial Aid Office." Answer, ¶ 1 (material in brackets supplied for the sake of clarity). The defense went on to allege, in substance, that the University's Financial Aid Office advised Rumbin that "federal grant monies available to the University would be utilized first to finance the defendant's educational expenses before any loan funds"; the University's agents caused the defendant to make application for loans in excess of what would have been necessary if available grant monies had been utilized, and "beyond what it knew or should have known to be [within] the defendant's ability to repay such loans"; the University failed to utilize federal grant funds then available toward Rumbin's education, "causing him to borrow beyond his means and ultimately be forced to discontinue his degree program" at the University; and that, in those circumstances, "any sums found owing" by Rumbin to the United States "are owed by said university to the defendant for its said fraudulent misrepresentations." *Id.*, ¶¶ 2-7.

On January 19, 1990, the Government filed interrogatories addressed to Mr. Rumbin in the 1989 Action. Interrogatory No. II.1. asked Rumbin to "identify all loans or grants received by Peter R. Rumbin or the University of Chicago for the education of Peter R. Rumbin, including (A) The source of each loan or grant; (B) The amount of each loan or grant . . ." Rumbin responded to sub-

4

Interrogatory (A) as follows: "(1) University of Chicago, National Direct Student Loan. (2) Connecticut Student Loan Foundation," and to (B) as follows: "(1) $890 plus interest. (2) $5,000."

On July 20, 1990, Rumbin, now represented by counsel, filed an amended answer in the 1989 Action. That pleading reiterates, as a Fourth Defense, Mr. Rumbin's assertions that the University of Chicago represented to Rumbin that "federal grant monies then available to the University of Chicago would be allocated first to meet the defendant's [Rumbin's] financial assistance requirements before the University of Chicago would require the defendant to take a student loan as part of his award of public assistance," and the University thereafter "failed to utilize the federal grant monies then available, and despite its failure to exhaust these funds, it required the defendant to take a student loan." Rumbin's amended answer in the 1989 action alleged that "any obligation arising as a result of any sums loaned by or through the University of Chicago" are "unenforceable against the defendant" because "the defendant was fraudulently induced to incur such obligation by the University of Chicago." Amended Answer, ¶¶ 3-7.

A time came in the 1989 Action when the Government, acting through the office of the United States Attorney for this District (which had filed the complaint), filed a motion under Rule 41 "to dismiss this action with prejudice, in accordance with the attached Stipulation." The accompanying Stipulation for Dismissal provided that "the parties do hereby agree to the dismissal of the above captioned action with prejudice, each party to bear his own costs and attorney's fees." Stipulation, ¶ 1. Rumbin agreed to hold the United States and the DOEd harmless from "any and all lawsuits or claims of any character whatsoever, in connection with the subject matter or institution of this action." *Id.*, ¶ 2. The Stipulation was signed on September 24 1990 by an Assistant United States Attorney; by David A. Leff, counsel for Rumbin (from the Jacobs, Grudberg

firm in New Haven); and by Mr. Rumbin himself. Judge Eginton granted the motion to dismiss the 1989 Action with prejudice.

On the present motion in this action, the Government states that as a result of the termination of the 1989 Action, "the United States further directed its client, DOEd, to write-off the underlying loan in the original principal amount of $1,650.00, as well as a second student loan of $890.00, which had not been included in the previous litigation. Both student loan accounts were closed by DOEd." Main Brief for the Government [Doc. 13] at 2-3.

Mr. Rumbin's opposition to the Government's motion to dismiss his complaint focuses upon an account he gives of discussions which preceded the dismissal of the 1989 Action. Rumbin submits an affidavit in the case at bar [Doc. 41] which points out that in responding to the Government's interrogatories in the 1989 Action, he "revealed information on what I thought was three loans for $1,650, $890, and $5,000 respectively, and later learned that the latter was really two loans of $2,500." ¶ 7. Rumbin's affidavit then goes on to say:

> 8. In the 1989 case proceeding there were pre-trial conferences and at one point before the Hon. Judge Eginton a full candid conference with the U.S. Attorney, Attorney Leff and myself where each of the four loans and all of the defenses of limitations periods, fraudulent inducement, lack of consideration, the irregularities with the student loan and grant on the part of the University of Chicago and the U.S. Department of Education investigation of them, and their being made to return grant money, and specifically all four of the loans disclosed.
>
> 9. It was after all of the facts, issues, arguments and defenses and issue were laid out and discussed as all four of the loans, the stipulation for judgment of dismissal with prejudice was entered by agreement of both parties on September 24, 1990.
>
>      \*    \*    \*    \*    \*
>
> 12. The defendant USA waited some 21 years until March 2001

      with the interest piling up to institute the enforcement by Treasury offset.[2]

The Government's response to this submission by Plaintiff appears in its Reply Brief [Doc. 43], which seeks to refute Rumbin's argument, as paraphrased by the Government, that "the United States is precluded from enforcing collection on two student loans because of earlier litigation which resolved two other student loans through agreement of the parties." Brief at 2. The Government's brief continues by saying:

> The loans that were the subject of the earlier litigation were a National Direct Student Loan (NDSL) and a Federally Insured Student Loan (FISL). The two loans that are the subject of current administration enforcement are Guaranteed Student Loans (GSLs), which fall under a completely different loan program than NDSL and FISL programs. Federally guaranteed loans are serviced first by a Guaranty Agency before the debt is ultimately assigned to the Department of Education.
>
>   The Parties entered into a stipulation to resolve the earlier litigation involving the NDSL and FISL loans in September, 1990. The GSLs, on the other hand, which are the subject of current administrative collection, were not even referred to the United States by the Guarantee Agency until December 14, 1998, more than eight years after the previous litigation was resolved by stipulation.

*Id*. at 2-3 (Pacer cites omitted).

In short, the Government contends that because "[t]he two loans that are the subject of current administrative enforcement are different than the loans which were the subject of prior litigation," Brief at 2, Mr. Rumbin is not in a position to argue that principles of claim or issue preclusion, *res judicata* or otherwise, bar the Treasury Department from making deductions from Plaintiff's Social Security benefits on account of the two GSLs, in the amounts of $2,500 each, plus

---

[2] There are some grammatical lapses in Plaintiff's affidavit, which are quoted in text as written.

accrued and accruing interest. The GSLs did not form a part of the 1989 Action's subject matter, the Government argues, because the Guaranty Agency did not refer those loans to the Department of Education, for ultimate transmission to the Department of Justice, until eight years after the 1989 Action was dismissed in 1990.

Plaintiff states that the deductions from his Social Security benefits began in March 2011. Doc. 41 at ¶ 21. It is those deductions that Plaintiff complains of in the case at bar.

## II.  DISCUSSION

**A.    The Government's Motion to Dismiss the Complaint**

The Government moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addressing the sufficiency of a complaint, the court must accept as true all factual allegations and draw from them all reasonable inferences in favor of the pleader, but the court is not required to credit conclusory allegations or legal conclusions couched as factual allegations. *Nielsen v. Rabin*, 746 F.3d 58,62 (2d Cir. 2014). With respect to *pro se* litigants, such as the Plaintiff in this case, "[w]hile pro se complaints must contain sufficient factual allegations to meet the plausibility standard," the Second Circuit "look[s] for such allegations by affording the litigant special solicitude, interpreting the complaint to raise the strongest claims that it suggests." *O'Callaghan v. New York Stock Exchange*, No. 13-3370-cv, ___ F.App'x ___, 2014 WL 1422395, at *1 (2d Cir. April 15, 2014) (citations and internal quotation marks omitted).

In the case at bar, there is an inherent surface *implausibility* in Plaintiff's present claim that a stipulated dismissal of the Government's earlier claims, based on loans specified in the Government's 1989 complaint against Plaintiff, also operates to bar the Government from the administrative enforcement of different loans, not referred to in the 1989 complaint and not even referred to the Government for enforcement at that time. If that was the whole story, the Government's motion to dismiss Plaintiff's present complaint would have to succeed. But the case is complicated by the allegations in Plaintiff's complaint, amplified by his affidavit on this motion, that in response to the Government's interrogatory in the 1989 Action, Plaintiff identified the GSL loans totaling $5,000 as among education loans he had received, and those later GSL loans were included in the discussions between counsel for the parties and Plaintiff that resulted in the stipulated dismissal of the 1989 Action.

There is no question that the Government's complaint in the 1989 Action referred only to the NDSL loan of $1,650. However, the Government chose to expand the boundaries of the litigation by asking Rumbin, in interrogatories under the pre-trial discovery rules, to "Identify *all* loans or grants received by Peter R. Rumbin or the University of Chicago for the education of Peter R. Rumbin," and to specify "The source of *each* loan or grant" (emphases added). Mr. Rumbin's response to the Government's interrogatory referred to the GSL loans, which brought to four the number of his loans made known to the United States Attorney: 1 NDSL, 1 FISL, 2 GSL. Rumbin says in his complaint and affidavit that all four loans were discussed by counsel for the parties before the Government's 1989 complaint against him was dismissed with prejudice. Although the stipulation of dismissal referred only to "the above captioned action," and the Government's complaint referred only to the NDSL loan, the discussions among counsel leading up to the

9

stipulation apparently created in Rumbin, a layman, the not implausible belief that the dismissal of the action covered and disposed of all four loans.

The question that arises is whether these circumstances could give rise to a theory of equitable estoppel, or some other impediment to the Treasury's administrative collection of the GSL loans through deduction of benefits. I do no more than raise the question. The Government's right to that administrative collection may be entirely unaffected by the events giving rise to and resulting in the dismissal of the Government's 1989 Action. But the record of this case needs to be expanded to include the Government's account of those events.

Accordingly, the Government is directed to submit proof in affidavit or documentary form that addresses the account given by Mr. Rumbin in his pleadings. Specifically, that proof should focus upon whether, and for what purpose, the GSL loans were discussed by counsel during the 1989 Action pre-dismissal stipulation; what was said about them; any discussions about what loans would or would not be covered by the stipulation; and any other aspects relevant to the question posed by Plaintiff's submissions.

The Government is directed to file and serve that proof not later than **July 18, 2014.** The Government's motion to dismiss Plaintiff's complaint will be denied on the present record, without prejudice to renewal after the submission of the further proof contemplated by this Ruling.

**B.    The Motion of the University of Chicago and Beth Harris for Summary Judgment**

Rule 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The University of Chicago and its student loan administrator, Beth Harris, are clearly entitled to summary judgment dismissing Plaintiff's complaint against them. To the extent that Plaintiff challenges directly the Treasury Department's administrative enforcement of the GSL loans, the University did not originate those loans, and played no part in declaring them in default. In any event, the University cannot be called upon to answer for the actions of the Government in exercising administrative enforcement.

The broader charge Mr. Rumbin makes against the University and Ms. Harris is that the University fraudulently induced Rumbin to take out the student loans which remain unpaid and generate the Treasury's deductions from his benefits.

It is apparent from the pleadings in the Government's 1989 Action against him that at that time, Mr. Rumbin was aware of the facts and circumstances which underlie his claims of fraud and related misconduct on the part of the University defendants. He did not assert those claims against those defendants until he filed the present action in 2011.

In these circumstances, Plaintiff's claims against the University and Harris are barred by any applicable statute of limitations.

### III.  CONCLUSION

For the foregoing reasons, the motions are decided as follows:

The motion of Defendants Duncan and Geithner [Doc. 12] to dismiss the Plaintiff's Complaint is DENIED, without prejudice to renewal or reassertion as a motion for summary judgment upon submission of proofs consistent with this Ruling.

The motion of Defendants Beth Harris and the University of Chicago [Doc. 28] is

GRANTED.  Plaintiff's Complaint against those Defendants is DISMISSED, with prejudice.

It is SO ORDERED.

Dated:   New Haven, Connecticut
              June 25, 2014


                                                            */s/Charles S. Haight, Jr.*
                                                            CHARLES S. HAIGHT, JR.
                                                            Senior United States District Judge