# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER R. RUMBIN, | |
| Plaintiff, | |
| v. | 3:11-CV-00904 (CSH) |
| ARNE DUNCAN, ET AL. | February 17, 2016. |
| Defendants. | |

## RULING ON RENEWED MOTION TO DISMISS

HAIGHT, Senior District Judge:

Plaintiff Peter R. Rumbin brought this suit against the United States, through Secretary of Education Arne Duncan and then-Secretary of the Treasury Timothy Geithner (collectively "the Government" or the "United States") and against the University of Chicago and one of its administrators. This case concerns the disposition of two of the Plaintiff's student loans. Plaintiff has defaulted on the loans, which has resulted in the United States making deductions from Plaintiff's monthly Social Security payments. This Court's prior opinion [Doc. 50] ("June 25, 2014 Ruling") granted summary judgment as to the University of Chicago and its administrator. However, the June 25, 2014 Ruling denied without prejudice to refiling the Government's Motion to Dismiss. This ruling resolves the Government's Renewed Motion to Dismiss [Doc. 51].

## I. Factual Background

The Plaintiff, Peter Rumbin, while a student at the University of Chicago, took out four student loans: a loan for $1,650 denominated a National Direct Student Loan ("NDSL"); a loan

for $890 denominated a Federally Insured Student Loan ("FISL"); and two loans for $2,500 each denominated Guaranteed Student Loans ("GSLs"). Rumbin, in the case at bar, complains of deductions from his Social Security Benefits that began in March 2011. Doc. 41 at ¶ 21. These deductions are the result of  Rumbin's default on the two GSLs of $2,500 each.

In 1989, the United States commenced an action against Rumbin for nonpayment of two of his loans: Docket No. N-89-522 ("the 1989 Action"). The complaint in the 1989 action was attached to Plaintiff's complaint in this action, and referred only to the NDSL, which had been assigned to the Department of Education ("DoEd") in 1989 after the Plaintiff defaulted on the NDSL in 1980. During the course of the litigation, the Government filed interrogatories addressed to Rumbin. Interrogatory No. II.1 asked Rumbin to "identify all loans or grants received by Peter R. Rumbin or the University of Chicago for the education of Peter R. Rumbin, including (A) The source of each loan or grant; (B) The amount of each loan or grant . . . " Rumbin responded to interrogatory (A) as follows: "(1) University of Chicago, National Direct Student Loan. (2) Connecticut Student Loan Foundation," and to (B) as follows: "(1) $ 890 plus interest. (2) $5,000." *Defendant's Response to Plaintiff's First Set of Interrogatories*, attached to Doc. 1.

After some litigation, the Government filed a motion under Fed. R. Civ. Pro. 41 to dismiss the action with prejudice in accordance with an attached Stipulation. The Stipulation provided that "the parties do hereby agree to the dismissal of the above captioned action with prejudice, each party to bear his own costs and attorney's fees." Stipulation, ¶ 1. Rumbin also agreed to hold the DoEd harmless from any lawsuits related to the "subject matter or institution of this action." *Id.*, ¶ 2. The Stipulation was signed by Christine Sciarrino, Special Assistant

United States Attorney, David A. Leff, attorney for Rumbin, and Rumbin himself. Stipulation, p. 2.

The Government represented in the briefing for the first Motion to Dismiss [Doc. 13] that, as a result of the Stipulation, "The United States ... directed its client, DoEd, to write-off the underlying loan in the original principal amount of $1650.00, as well as a second student loan of $890.00, which had not been included in the previous litigation. Both student loan accounts were closed by DOEd." Doc. 13, pp. 2–3.

The crux of Rumbin's opposition to the Government's original motion to dismiss deals with the negotiations that precipitated the filing of the Rule 41 motion and the Stipulation. Rumbin's affidavit in the case at bar [Doc. 41] notes that Rumbin, in responding to the Government's interrogatories in the 1989 action, noted that he "revealed information on what [he] thought was three loans for $1,650, $890, and $5,000 respectively, and later learned the later was really two loans of $ 2,500." Doc 41, ¶ 7. Plaintiff goes on to state that during the 1989 case, there were "pretrial conferences . . . where each of the four loans and all of the defenses of limitations periods, fraudulent inducement, lack of consideration, the irregularities with the student loan and grant on the part of the University of Chicago and the U.S. Department of Education investigation of them, and their being made to return grant money, and specifically all four of the loans disclosed." *Id.* at ¶ 8. Furthermore, Plaintiff's affidavit notes that "[i]t was after all of the facts, issues, arguments and defenses and issue were laid out and discussed as all four of the loans, the stipulation for judgment of dismissal with prejudice was entered by agreement

of both parties on September 24, 1990."[1] *Id.* at ¶ 9.  Rumbin also notes that "[t]he defendant USA waited some 21 years until March 2011 with the interest piling up to institute the enforcement by Treasury offset." *Id.* at ¶ 12.

The Government argues that it should not be precluded from collecting on the GSLs because of earlier litigation that resolved two other loans by agreement of the parties. Doc. 13 at 2. The heart of the Government's argument is that

> The parties entered into a stipulation to resolve earlier litigation involving the NDSL and FISL loans in September, 1990. The GSLs, on the other hand, which are the subject of current administrative collection, were not even referred to the United States by the Guarantee Agency until December 14, 1998, more than eight years after the previous litigation was resolved by stipulation.

*Id.* at 2–3.

As summarized in the June 25, 2014 order, "the Government contends that because '[t]he two loans that are the subject of current administrative enforcement are different than the loans which were the subject of prior litigation,' [Doc. 13] at 2, Rumbin is not in a position to argue that principles of claim or issue preclusion, *res judicata* or otherwise, bar the Treasury Department from making deductions from Plaintiff's Social Security benefits on account of the two GSLs, in the amounts of $2,500 each, plus accrued and accruing interest."[2] June 25, 2014 Ruling at 7–8.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows parties to assert by motion the defense that the other party "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. Pro.

---

[1] Plaintiff's Affidavit contains several grammatical lapses. They are quoted in text as written.

[2] This summary of facts is paraphrased from the June 25, 2014 decision.

12(b)(6). In analyzing whether a plaintiff has stated a claim upon which relief can be granted, the court must accept as true all factual allegations of the complaint. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). The claim set forth by the Plaintiff in the complaint must be plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not need to put forth "detailed factual allegations" to survive a 12(b)(6) motion, but must involve more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" *Id.* (*quoting Twombly*, 550 U.S., at 555). *Pro se* complaints are construed liberally, but still must meet the *Twombly/Iqbal* plausibility standard. *Hill*, 657 F.3d at 122 (*citing Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009)). However, "we are constrained to conduct our examination with 'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].'" *Hill*, 657 F.3d at 122 (*quoting Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)).

## A. Claim and Issue Preclusion

Plaintiff claims that the attachment of his Social Security benefits is precluded because of res judicata and collateral estoppel. The Supreme Court generally refers to the two doctrines as claim preclusion and issue preclusion, respectively, and to the more general topic of preclusion as res judicata. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion, also referred to as the rule against splitting a claim, stands for the proposition that an individual gets one suit to vindicate a claim. Restatement (Second) of Judgments § 24 (Am. Law Inst. 1982) ("[T]he claim

5

extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.") Issue preclusion precludes reargument of a particular issue that was previously litigated. *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

Claim preclusion applies only in situations where two cases are brought by the same claimant (or someone in privity with the claimant) against a defendant. *See Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010). Here, plaintiff seeks to apply claim preclusion bar to an administrative action, namely the Offset program of the United States Department of the Treasury (the "Treasury"), which attached Rumbin's Social Security Benefits. However, this administrative collection remedy is not the equivalent of collection litigation against the plaintiff. The administrative action undertaken by the Treasury is not judicial in nature, and thus is not an action that can be barred by claim preclusion or issue preclusion. *Compare Chauffeur's Training School, Inc v. Spellings*, 478 F.3d 117, 132 (2d Cir. 2007) (applying collateral estoppel where an administrative determination by an administrative law judge allowed for a full and fair opportunity for litigation). Unlike the administrative proceeding in *Chauffeur's Training School Inc. v. Spellings*, the offset program does not involve any adjudication. *Id.* For these reasons, claim and issue preclusion are not bars to the administrative collection of defaulted federally guaranteed loans for the reasons discussed above.

**B.     Equitable Estoppel**

Because the Court reads a *pro se* defendant's case liberally, and reads it to include the strongest claims that it suggests, the Court will also consider an equitable estoppel argument, though these words cannot be found in Plaintiff's complaint. "The doctrine of equitable estoppel

6

is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001). The doctrine has limited application under federal law: "a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to [his] detriment." *Id.* This case pivots on the question of whether the Government made a misrepresentation of fact to Rumbin with reason to believe that Rumbin would rely upon it.  Rumbin asserts that the Government, in its interrogatories, requested that he disclose all outstanding student loans.  Rumbin did so, and in his pleadings relied on this disclosure to support his belief that all four loans were previously adjudicated. However, Rumbin has not plausibly pled that the Government made any misrepresentation of fact nor that the Government, if tit had misrepresented a fact, had reason to believe that Rumbin would rely on it. Rumbin's misunderstanding, no matter how understandable for a lay person, does not give rise to an allegation of an active misrepresentation by the Government. On this ground, Rumbin has failed to plausibly allege the facts necessary to survive a motion to dismiss.

**C.    Statute of Limitations**

Rumbin contends that the "defendants are barred from any asets [*sic*] for their debts claims and offsetting the plaintiff's Social Security or otherwise prosecution of the collection of this alleged debt by any applicable relative statute of limitation." Doc. 1, p. 2. The Government, on the other hand, argues that 20 U.S.C. § 1091a(a), known as the Higher Education Technical Amendments of 1991 ("HETA"), Pub. L. No. 102–26, 105 Stat. 123 (1991), "retroactively

eliminated all applicable statutes of limitations as they relate to student loan debts." Doc. 13, p. 5.

Before the enactment of HETA, the statute of limitations period was six years for suits to recover on defaulted student loans. *See* Higher Education Act of 1965, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. No. 99–272 (1986) (codified at 20 U.S.C. §1091a(a)(4)(B) & (C)). However, when Congress enacted HETA, it retroactively eliminated any statute of limitations. *United States v. Holmes*, 2002 WL 570889 (N.D.N.Y. Apr. 10, 2002) ("the Higher Education Technical Amendments of 1991 abrogated the statute of limitations for student loan collections."); *accord  United States v. Owen*, 263 F.3d 161 (5th Cir. 2001) ("There is no statute of limitation period applicable to any action to recover defaulted student loans."); *United States v. Lawrence*, 276 F.3d 193 (5th Cir. 2001) (HETA "eliminates all limitations defenses for collection of student debts."); *United States v. Motley*, 238 F.3d 425 (6th Cir. 2000) (HETA "retroactively abrogated all statutes of limitations on actions to collect defaulted federally guaranteed student loans and revived stale actions.") *United States v. Phillips*, 20 F.3d 1005 (9th Cir. 1994)("Under HETA, . . . Congress provided that actions to collect on defaulted student loans were no longer subject to any statute of limitations . . . . [and] also revived all actions which would have otherwise been time-barred"); *United States v. Hodges*, 999 F.2d 341 (8th Cir. 1993) ("[HETA] eliminated the six-year statute of limitations for student loan collections."); *United States v. Glockson*, 998 F.2d 896 (11th Cir. 1993) ("[T]he Higher Education Technical Amendments of 1991 do revive actions to collect unpaid student loans that were barred by the statute of limitations before the enactment of that legislation.") Furthermore, Congress also revived any time barred actions to recover on defaulted student loans. *Phillips*, 20 F.3d at 1007. Thus, Rumbin's invocation of the statute of limitations fails as a

8

matter of law under HETA.

**D.    Laches**

Mr. Rumbin also asserts a laches argument in conjunction with his statute of limitations argument. Laches is an equitable doctrine that requires proof of three elements: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998). However, a defense of laches to the enforcement of defaulted student loans fails for two reasons. Firstly, the United States is generally not subject to the defense of laches in enforcing its rights. *United States v. Litts*, 2000 WL 435484 at *3 (Feb. 28, 2000, D. Conn.) (*citing United States v. Summerlin*, 310 U.S. 414, 416 (1940)). Secondly, "[t]he overwhelming majority of courts have rejected the claim as a defense to federally financed student loans." *Id.* (*citing United States v. Menatos*, 925 F.2d 333, 335 (9th Cir.1991); *United States v. McLaughlin*, 7 F.Supp.2d 90, 92 (D. Mass 1998); *United States v. Smith*, 862 F.Sup. 257, 262 (D.Haw.1994)); *see also Lawrence*, 276 F.3d at 195. Rumbin's assertion of laches also fails as a matter of law.

## III. CONCLUSION

For the foregoing reasons, the motion is decided as follows:

The renewed motion of Defendants Duncan and Geithner [Doc.51] to dismiss the Plaintiff's Complaint is GRANTED. The Clerk is directed to dismiss the Complaint as to these Defendants with prejudice, and to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut

February 17, 2016

_/s/ Charles S. Haight, Jr._

Charles S. Haight, Jr.

Senior United States District Judge